## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN ISMAIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:18-cv-01345-JHE |
| | ) | |
| ASCENSIONPOINT RECOVERY | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

On August 21, 2018, Plaintiff Susan Ismail ("Ismail" or "Plaintiff"), individually and in her capacity as the personal representative of the Estate of Fekry Hassan Ismail ("the Estate"), filed this action, alleging Defendant Ascensionpoint Recovery Services, LLC ("APRS" or "Defendant") violated the Fair Debt Collection Practices Act ("FDCPA") and state law in its communications with her. (Doc. 1). APRS has moved for judgment on the pleadings. (Docs. 14 & 15). Ismail opposes this motion, (doc. 17), and APRS has filed a reply in support, (doc. 18). For the reasons discussed more fully below, APRS's motion is **GRANTED**.

### I. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). The court considers only the pleadings—the complaint, answer, and any exhibits thereto. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Substantively, the court applies the same principles to a motion to dismiss under Rule 12(c) as it would to a motion to dismiss under Rule 12(b)(6). *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("Whether the court examine[s] [the complaint] under Rule 12(b)(6) or Rule 12(c), the question [is] the same: whether [it] state[s] a claim for relief."). Rule 12(b)(6) permits dismissal when a complaint is deficient under Rule 8 and fails to state a claim upon which relief can be granted. Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially

plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

A court assessing whether a party is entitled to judgment on the pleadings accepts as true all material facts alleged in the non-moving party's pleading and views those facts in the light most favorable to the non-moving party. *See Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). This means that, on a "defendant's motion for judgment on the pleadings, where no matters outside the pleadings are presented, the fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).[2] However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

## II. Background

Fekry Hassan Ismail ("Fekry Ismail") died on or about September 12, 2017. (Doc. 1 at ¶ 6). Prior to his death, Fekry Ismail had executed a will naming Plaintiff as the personal

---

[2] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

representative of his estate. (*Id.* at ¶ 5). Through an attorney, Plaintiff probated the will on October 26, 2017, in the Probate Court of Jefferson County, Alabama. (*Id.* at ¶ 7). She was appointed personal representative of the Estate and was granted letters testamentary to administer the Estate. (*Id.*). The filed documents stated Plaintiff's attorney was Brooke A. Everley. (*Id.* at ¶ 8). The Estate published a Notice to Creditors in the Alabama Messenger on October 28, 2017, November 4, 2017, and November 11, 2017. (*Id.* at ¶ 9).

Sometime around July 2018, APRS sent a letter (the "Letter") to the Estate.[3] (*Id.* at ¶ 11; doc. 6-1). The Letter states, in its entirety:

> Dear Estate of FEKRY H ISMAIL,
>
> We would like to offer our deepest condolences during this time of loss. Thank you in advance for attending to this matter. This letter is to confirm or correct location information for the person responsible for paying the outstanding bills from the decedent's estate.
>
> Please have the person who is responsible for paying the outstanding bills from the decedent's estate contact our office. We can be reached toll-free at **(888) 806-9074** for more information.
>
> Please remember that only the decedent's estate is liable for any outstanding bills. **Persons handling the estate and family members are not personally responsible for payment of any outstanding bills of the estate and are not required to pay individually or with assets owned jointly with the decedent.**

---

[3] Ordinarily, a court may not consider materials outside the complaint in addressing a motion for judgment on the pleadings without converting it to a motion for summary judgment. FED. R. CIV. P. 12(d). However, a court may properly consider a document incorporated by reference into the complaint in addressing a motion under Rule 12(c), whether or not that document is actually attached to the complaint. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (holding the "incorporation by reference" doctrine applicable to Rule 12(b)(6) motions applies to Rule 12(c) motions as well). A document is incorporated by reference into the complaint when it "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the Letter forms the sole basis for Ismail's causes of action and is extensively referenced in her complaint, so it is central to her claims. And the Letter is undisputed because Ismail does not challenge its authenticity. *See id.* Accordingly, the undersigned considers the Letter without converting the motion.

Very Truly Yours,

AscensionPoint Recovery Services, LLC

Phone Number: (888) 806-9074
Reference No.: 3290184

(Doc. 6-1) (emphasis in original).

## III. Analysis

Ismail's complaint contains three counts: (1) a state law negligence count, (doc. 1 at ¶¶ 15-19); (2) a state law recklessness and wantonness count, (*id.* at ¶¶ 20-24); and (3) a count alleging violations of the FDCPA, (*id.* at ¶¶ 25-27). APRS seeks judgment on the pleadings as to all three claims. Because the disposition of the FDCPA count informs the disposition of the other two counts, the undersigned analyzes it first.

### A. Count III (FDCPA)

A plaintiff asserting an FDCPA claim must show "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013) (quoting *Janke v. Wells Fargo and Co.,* 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011)). At the motion to dismiss stage, the question is whether a plaintiff has alleged a plausible violation of the FDCPA under the "least sophisticated consumer" standard. *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019). The least sophisticated consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (citation omitted). The test is objective; "[t]he inquiry is not whether the particular plaintiff-

consumer was deceived or misled," *Crawford v. LVNV Funding LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014). The objective nature of the test "protect[s] naive consumers, [but it] also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc*, 601 F.3d at 1194 (citation omitted).

### 1. Lack of Specificity

APRS first contends it is entitled to judgment on the pleadings because the complaint does not identify any particular provision of the FDCPA that APRS allegedly violated. (Doc. 15). The complaint alleges APRS engaged "in numerous activities" that violate the FDCPA, including "attempting to collect time barred debt, failing to make disclosures as required by law and contacting a consumer represented by counsel." (Doc. 1 at ¶ 26). Ismail contends this is adequate because she is not required to cite a specific provision of the FDCPA. (Doc. 17 at 7).

None of the authority either party cites is particularly convincing on this point. Ismail relies mostly on out-of-circuit law that predates *Iqbal* and *Twombly*. (*See* doc. 17 at 7-8) (citing *Miller v. Knepper & Moga, P.C.*, No. 99 C 3183, 1999 WL 977079, (N.D. Ill. Oct. 22, 1999); *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031 (W.D. Wis. 2002)). For its part, APRS relies primarily on *Birdette v. Capitol One Bank (USA), N.A.*, No. 12-11640-F, 2012 WL 8319317, (11th Cir. July 25, 2012), an unpublished Eleventh Circuit order denying a plaintiff leave to proceed *in forma pauperis* on appeal.[4] (Doc. 15 at 6-7). In *Birdette*, the Eleventh Circuit noted

---

[4] APRS also cites two published out-of-circuit decisions for the same proposition. In *Conboy v. AT & T Corp.*, 241 F.3d 242 (2d Cir. 2001), the plaintiffs argued on appeal that the complaint could support other FDCPA claims, even though it had specifically identified only a violation of 15 U.S.C. § 1692e(11) and the parties had proceeded as though that was the only FDCPA violation. The Second Circuit held any other FDCPA claims were abandoned on appeal because of the plaintiffs' admitted failure to raise them in the district court. *Id.* at 257. This is not

the plaintiff had "failed to identify which specific provisions or subsections of the FDCPA formed the basis for his allegations." *Id.* at *1. But the *Birdette* plaintiff's complaint stated only that the defendants "engaged in unlawful debt practices." *Id.* Here, the complaint is somewhat more specific; while it does not cite to particular code sections, it does at least identify three ways in which APRS allegedly violated the FDCPA. Each of those can be traced, with varying degrees of effort, to an FDCPA provision.

If the complaint were in fact insufficiently specific as to which FDCPA provisions it proceeds under, and if its only sin were its lack of specificity, the undersigned would take Ismail up on her invitation to dismiss the FDCPA claims with leave to amend, (*see* doc. 17 at 8). *See Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003) (noting leave to amend should be granted where "a more carefully drafted complaint might state a claim upon which relief can be granted"). But it is unnecessary to decide whether the complaint's references to conduct prohibited by the FDCPA, rather than citations to specific provisions, are sufficient; as discussed further below, Ismail fails to support an FDCPA violation at all. Thus, the complaint would still be subject to dismissal even assuming it sufficiently identified the FDCPA violations it alleges, and it would be futile to allow leave to amend. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

### 2. False, Deceptive, or Misleading Representations Related to Time-Barred Debt

The complaint indicates, without more, that the "[t]he purported debt [APRS] was attempting to collect was time-bared under Alabama law." (Doc. 1 at ¶ 13). Ismail's complaint

---

an appeal, so the logic of *Conboy* does not apply. And *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 159 (D.D.C. 2015), simply follows what it believes to be the logic of *Birdette* and *Conboy*, and it is convincing only to the same extent as those cases.

does not specify what provision of Alabama law creates the time bar, nor how APRS's alleged attempt to collect the time-barred debt violates the FDCPA. Ismail's response to the motion to dismiss fleshes this out, pointing to Ala. Code § 43-2-350 as the source of the time bar and contending the Letter violated the prohibition in 15 U.S.C. § 1692e on false, deceptive, or misleading representations in connection with debt collection because it "implies there are enforceable outstanding debts Plaintiff is responsible for as the personal representative of the estate." (Doc. 17 at 8-10).

Ala. Code § 43-2-350 provides that

> All claims against the estate of a decedent, other than [claims held by the personal representative of the decedent or by an assignee or transferee of the personal representative, or in which the personal representative has an interest], whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed 30 days after notice within which to present the claim, and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited.

ALA. CODE § 43-2-350(b). The referenced § 43-2-61 requires the personal representative of the estate to provide actual notice of her appointment, compliant with Ala. Code § 43-2-60,[5] "to all persons, firms, and corporations having claims against the decedent, who are known or who are reasonably ascertainable by the personal representative within six months from the grant of letters." ALA. CODE § 43-2-60, 43-2-61(1). For others, notice by publication is sufficient. ALA. CODE § 43-2-61(2).

---

[5] This provision requires notice of appointment to state "the name of the deceased, the day on which letters were granted, by what court, stating the county and notifying all persons having claims against the estate to present the same within the time allowed by law or that the same will be barred." ALA. CODE § 43-2-60.

Ismail's statement the debt "was time-barred under Alabama law," (doc. 1 at ¶ 13), is a "naked assertion . . . [lacking] factual enhancement," *Twombly*, 550 U.S. at 557. The complaint does not indicate either that (1) Ismail provided actual notice of her appointment to APRS, and it failed to timely file a claim; or (2) that APRS was not an entity whose claims against Fekry Ismail were unknown or not reasonably ascertainable, so Ismail was only required to provide notice by publication (as she in fact did, (*see* doc. 1 at ¶ 8)) in order to create the time bar to APRS's ability to collect debt. In the absence of any facts to support the debt was time-barred under Alabama law, Ismail's claim APRS violated the FDCPA by trying to collect a time-barred debt fails.

Even if the complaint contained factual allegations to support that the debt was time-barred, though, it does not necessarily follow that the Letter was actionable under the FDCPA. In *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264 (11th Cir. April 5, 2019), a case of first impression in this circuit, the Eleventh Circuit recently discussed the circumstances under which a communication regarding a time-barred debt violates § 1692e. The court first noted "[t]here is no question that [§ 1692's prohibitions on falsely representing 'the character, amount, or legal status of any debt' and threatening 'any action that cannot legally be taken or that is not intended to be taken'] prohibit a debt collector from suing or threatening to sue on a time-barred debt, and federal courts have uniformly so held." *Id.* at 1270 (citing *Crawford*, 758 F.3d at 1259). Joining several other circuits,[6] the Eleventh Circuit held "with regard to a collection letter seeking payment

---

[6] Notably, this includes the Seventh Circuit. The Eleventh Circuit stated it was "persuaded by the reasoning of . . . *McMahon* [*v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014)]," a case Ismail cites for the proposition that "[e]fforts to collect time-barred debts can violate the FDCPA," (Doc. 17 at 9).

on a time-barred debt, an express threat of litigation is not required to state a claim for relief under § 1692e so long as one can reasonably infer an implicit threat." *Id.* at 1271.

Ismail cites *McCamey v. Capital Mgmt., Servs., LP*, No. 5:17-CV-1429-UJH-VEH, 2018 WL 3819828, at *6 (N.D. Ala. Aug. 10, 2018), for the proposition that "[i]t is objectively reasonable for [the least sophisticated] consumer, upon receiving a letter with 'settlement offer' to start wondering about legal exposure," and states it was objectively reasonable for her to do the same when confronted with the Letter. If Ismail interpreted the Letter as an offer to settle time-barred debt or risk litigation, this was the sort of idiosyncratic interpretation that fails to meet the least sophisticated consumer standard. The Letter is a far cry from the type of communication in *McCamey* (which made explicit offers to settle time-barred debt, *see* 2018 WL 3819828 at *1), or any other communication courts have found could support an FLSA violation. The Letter makes a single request: that the Estate "have the person who is responsible for paying the outstanding bills from the decedent's estate contact" APRS, (doc. 6-1). It does not state or suggest there are steps Ismail or the Estate could take to "resolve" or "settle" debt, *see Holzman*, 920 F.3d at 1272. In fact, it does not reference any specific debt owed by the Estate (for good reason, as discussed below). It does not warn of any consequences or threaten litigation for failure to make a timely payment. *Id*. It does not provide a deadline for compliance. The Letter does not even suggest any action if the Estate fails to identify the person handling its debts. To the extent Ismail argues the Letter made her "start wondering about legal exposure," by informing her, as she axiomatically states, that "the estate is responsible for paying the outstanding bills of the Estate," (doc. 17 at 10), it was unreasonable for her to do so.

The undersigned finds that, as a matter of law, the least sophisticated consumer could not have interpreted the Letter as a threat to collect a time-barred debt through litigation. Accordingly,

Ismail's claim the letter was false, deceptive, or misleading on that basis fails, and APRS is due judgment on the pleadings as to that claim.

### 3. Failure to Make Required Disclosures[7]

Ismail contends APRS violated the FDCPA by failing to disclose it was a debt collector and that any information obtained would be used for the purpose of debt collection. (Doc. 17 at 10). This, she says, violates 15 U.S.C. § 1692e(11), which states:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

The FDCPA generally defines "communication" to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium," 15 U.S.C. § 1692a(2), and

---

[7] Ismail's response to this section argues she has standing to bring an action based on an FDCPA violation due to her status as the personal representative of the Estate. (Doc. 17 at 10-11). To support this, she points to *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y. 1988), which she quotes for the proposition that an administratrix of an estate has standing to sue for violations of the FDCPA. (*Id.*). But APRS does not challenge her standing to bring suit for a violation of the FDCPA—at least, not on behalf of the Estate. As for Ismail's standing to bring individual claims, APRS's reply distinguishes *Riveria* (and another case Ismail cites for the same proposition) because neither case involved individual claims. (Doc. 18 at 6). This is not a meaningful distinction, because the FDCPA's liability provision provides that "any debt collector who fails to comply with any provision of this subchapter <u>with respect to any person</u> is liable to such person." 15 U.S.C. § 1692k(a) (emphasis added). "The phrase 'with respect to any person' is expansive and is properly understood to encompass all persons." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1302 (11th Cir. 2015). In other words, Ismail has standing to assert individual claims as long as there is an identifiable FDCPA violation, regardless of whether she herself is a "consumer" under the statute. *Id.* Since the undersigned concludes the complaint does not plausibly allege an FDCPA violation at all, however, it is unnecessary to discuss Ismail's standing to assert claims on her own behalf.

"consumer" as "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3).

APRS contends the Letter does not fit under § 1692e(11) because it does not convey information about a debt (and is thus not a "communication"), and it was not sent to a "consumer" because the Estate is not a natural person. (Doc. 15 at 9). Instead, APRS says the letter was a permissible location communication directed to a party other than the consumer, and as such it is governed by the requirements of § 1692b. (*Id.* at 10). That provision states:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—
>
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
>
> (4) not communicate by post card;
>
> (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and
>
> (6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

Additionally, APRS relies on the Federal Trade Commission's Statement of Policy Regarding Communications in Connection With the Collection of Decedents' Debts, 76 FR 44915-

12

01, 2011 WL 309977. That policy states that, because "letters addressed to the estate or an unnamed administrator or executor (legal terms with which many consumers are unfamiliar) often are opened by individuals who do so in an effort to help out, but who lack the authority to pay the decedent's debts from the estate's assets[,] a communication addressed to the decedent's estate, or an unnamed executor or administrator, is a location communication" subject to all the requirements of § 1692b. Although the FTC's opinion is nonbinding, the Supreme Court has stated its "judgment is to be given great weight by reviewing courts." *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965).

Consistent with APRS's contention, the Letter conforms to the § 1692b location communication requirements. First, the Letter is intended for someone other than the consumer, Fekry Ismail: specifically, the Estate. It identifies APRS and states that its purpose is to collect location information about "the person responsible for paying the outstanding bills from the decedent's estate."[8] (Doc. 6-1). It does not state Fekry Ismail owes any debts. There is no indication the letter runs afoul of the prohibitions in § 1692b(3)-(6).[9]

Ismail argues that the Letter cannot be a location communication because it was not intended for a third party. (Doc. 17 at 12). To the extent this is based on Ismail's repeated contention that the Letter was sent directly to her, (*see* doc. 1 at ¶¶ 11 & 12; doc. 17 at 2, 3, 5, 10, 12, 14), this is at odds with the Letter itself, which was addressed and sent to "the Estate of Fekry

---

[8] In its policy statement, the FTC "caution[ed] collectors using the term 'outstanding bills' that stating or implying in other ways that the decedent was delinquent on those bills" would violate the FDCPA. 2011 WL 309977. Although the letter in this case uses the term "outstanding bills," it neither states nor implies that Fekry Ismail was delinquent on them.

[9] The undersigned's conclusion that the letter does not represent a communication with a consumer represented by counsel (and thus whether the letter violates § 1692b(6)) is discussed separately below. *See* Section III.A.4.

H. Ismail." (*See* doc. 6-1). Given that the Letter "contradict[s] the general and conclusory allegations of the complaint," it, and not the complaint's allegations, governs. *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 921 (11th Cir. 2012) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)). Even though she is the Estate's personal representative, Ismail is not identical with the Estate; instead, she is a fiduciary acting on its behalf. *See* ALA. CODE § 43-2-833. And, as a matter of logic, Ismail's contention the Estate itself is the same as the consumer, (doc. 17 at 12), falls apart; someone other than Fekry Ismail (i.e., the personal representative) necessarily must act on behalf of his estate, so a communication with the Estate itself necessarily requires a response from a "person other than the consumer," 15 U.S.C. § 1692b. Further, although it is not binding, the FTC's statement explicitly confirms its understanding that a communication addressed to a decedent's estate attempting to ascertain the person with the authority to pay the debts of the Estate is a location communication if it otherwise meets the criteria of § 1692b. *See* 2011 WL 309977. It is impossible (and Ismail does not try) to square Ismail's argument a communication addressed to a decedent's estate is <u>definitionally not</u> a location communication with the FTC's understanding that some communications with a decedent's estate <u>are</u> location communications.

Ismail contends *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350 (11th Cir. 2009), supports her claim through its holding "phone messages to consumers referencing an 'important matter' or similar language can be sufficient to constitute a 'communication' under the FDCPA." (Doc. 17 at 11). *Edwards* concerned a collection agency's practice of leaving answering machine messages that, among other things, identified the debtor by name and asked the debtor to call back about an "important matter," deliberately leaving out that the message was from a debt collector in what the collection agency argued was an attempt to avoid violating other portions of the

FDCPA. *Id.* at 1351. The district court concluded those messages violated § 1692e(11), and the debt collector did not challenge that conclusion on appeal. *Id.* at 1352. But *Edwards* is distinguishable from this case because the communication at issue there was with the debtor, who is clearly a "consumer" under § 1692a(3). Ismail also references *Sparks v. Phillips & Cohen Associates, Ltd.*, 641 F. Supp. 2d 1234 (S.D. Ala. 2008), but the court in that case did not address whether the only contact analogous to the APRS letter—a telephone call to the decedent's former residence to inquire "who was handling [the decedent's] final affairs and whether there was a representative of the estate," *id.* at 1238—was a collection communication. Instead, it held that factual issues precluded summary judgment as to whether a number of subsequent contacts between a representative of the debt collector and various other parties (e.g., the person handling the debtor's estate, that person's employer (an attorney not involved with the probate of the estate), and the employer's fifteen-year-old daughter), all of which referenced the decedent's debts or could reasonably be construed as applying pressure on the person handling the debtor's estate, were communications made "in connection with the collection of a debt" under the FDCPA as a general matter. *Id.* at 1244-45. None of these subsequent contacts are analogous to the Letter.

The only case Ismail cites that addresses location communications is *Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560 (D.S.C. 2014), (doc. 17 at 12), which is not binding on this court and, in any event, does not support Ismail's claim. *Chatman* stands for roughly the same proposition as the unchallenged contention in the district court in *Edwards*—i.e., that voicemail messages left for the debtor could violate the § 1692e(11) disclosure requirement even if they did not reference debts specifically. *Id.* at 568. *Chatman* also concluded those messages could not be location communications because the debt collector "intended to and did reach" the consumer with the messages, so they could not contend the messages were communications for a "person other

than the consumer." *Id.* at 569.  As explained above, *Chatman's* rationale is not applicable to this case because the Letter was "intended to and did reach" the Estate, not Fekry Ismail.

Since Ismail has not plausibly alleged that APRS failed to make the disclosures required by § 1692e(11), APRS is entitled to judgment on the pleadings on this claim.

### 4. Communication with a Represented Consumer

The complaint's last alleged FDCPA violation is that APRS communicated with the Estate directly, despite the fact that Ismail, as the Estate's personal representative, was represented by an attorney.  (Doc. 1 at ¶¶ 11 & 26).

The FDCPA prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . . ."  15 U.S.C. § 1692c(a)(2).  Consistent with the express statutory language, a debt collector must have actual knowledge the consumer is represented in order to violate this section.  *Gustin v. Allied Interstate LLC*, No. 2:11-CV-03795-JEO, 2014 WL 1923735, at *4 (N.D. Ala. May 13, 2014); *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1334 (M.D. Fla. 2010).  *Accord Schmitt v. FMA All.*, 398 F.3d 995, 997 (8th Cir. 2005); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004).  Unlike § 1692e, § 1692c does not rely on the § 1692a(2) definition for "consumer."  Instead, it contains its own more expansive definition.  *Miljkovic*, 791 F.3d at 1295 n.1.  For the purposes of § 1692c, a consumer includes "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator."  15 U.S.C. § 1692c(d).

The only allegations in the complaint to support a violation of § 1692c are (1) probate documents "stated that the attorney for the petitioner/plaintiff was Brooke A. Everley, Esq.," (doc. 1 at ¶ 8); and (2) APRS's collection efforts "included written communications directly to the Plaintiff even though [APRS] knew or should have known Plaintiff was represented by counsel," (*id.* at ¶ 11). First, as discussed above, the conclusory assertion that the Letter was sent "directly to the Plaintiff" is belied by the Letter itself. What is left is a communication with the Estate, which, even under the more expansive § 1692c(d) definition, is not a "consumer."[10] Since the Estate is not a "consumer," APRS did not did not violate § 1692c by sending the Letter.

Second, even if the Estate were identical with Ismail in her capacity as the Estate's personal representative such that the Estate could be considered a "consumer," there are no non-conclusory allegations in the complaint to support APRS's actual knowledge that Ismail was represented by an attorney. Instead, the allegation that probate documents identify Ismail's attorney, (doc. 1 at ¶ 8), could support at most the inference that APRS ought to have known of Ismail's counsel, had APRS checked probate filings. But constructive knowledge is insufficient to support liability under § 1692c, *Gustin*, 2014 WL 1923735 at *4, so this inference cannot save Ismail's claim. And the court is not required to credit as true Ismail's conclusory assertion that APRS knew she was represented by counsel when there are no underlying facts to bolster it. *See Iqbal*, 556 U.S. at 678.[11]

_____

[10] Although it is conceivable that a communication addressed to a decedent's estate could in reality, be a communication with one of the natural persons identified in § 1692c(d), there is no allegation in the complaint that could support that inference in this case.

[11] Ismail's allegations about APRS's knowledge actually parallel the allegations the Supreme Court found wanting in *Iqbal*. *See* 556 U.S. at 680–81 (holding statements that government officials "knew of, condoned, and willfully and maliciously agreed to subject" a

Finally, a comparison of the pleadings shows that there is no genuine factual dispute as to whether APRS knew the Letter was a communication with a represented party. In its answer, APRS denies it knew Ismail had retained counsel at the time it sent the Letter and states it only discovered that fact just before the lawsuit was filed. (Doc. 6 at ¶ 11; doc. 15 at 11-12). Ismail argues she cannot respond to the latter part of this contention because she does not know how APRS gained this knowledge, which she says creates a question of fact that precludes judgment on the pleadings. (Doc. 17 at 14). But it is immaterial precisely when and how APRS found out that Ismail had retained counsel _after_ it sent the Letter, so long as it did not have that actual knowledge _at the time_ it sent the Letter. Since the complaint's conclusory allegation APRS knew Ismail was represented by counsel is not entitled to the assumption of truth, there is no actual conflict between the complaint and the answer as to that fact. _See Iqbal_, 556 U.S. at 678; _Stanton_, 239 F.2d at 106 (on a motion for judgment on the pleadings, the allegations in the answer are taken as true to the extent they do not conflict with the allegations in the complaint, which are taken as true).

The complaint cannot support a violation of § 1692c(a)(2). Accordingly, APRS is entitled to judgment on the pleadings on this last FDCPA claim.

### B. Counts I (Negligence) and II (Recklessness and Wantonness)

Finally, as to the first and second counts of the complaint, APRS contends Ismail has failed to plead the elements necessary for negligence or wantonness. (Doc. 15 at 12-13).

---

detainee to harsh conditions of confinement were "bare assertions" that "are conclusory and not entitled to be assumed true").

**1. Negligence**

Under Alabama law, a plaintiff alleging negligence must show "(1) a duty to a foreseeable plaintiff; (2) breach of that duty; (3) proximate causation; and (4) damage or injury." *Standifer v. Best Buy Stores, L.P.*, 364 F. Supp. 3d 1286, 1303 (N.D. Ala. 2019) (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)).

As to the negligence count, the complaint states APRS "knew or should have known the conduct set forth herein which was directed at and visited upon Plaintiff," (doc. 1 at ¶ 16); "knew or should have known that said conduct was improper," (*id.* at ¶ 17); and "negligently failed to prevent and/or participated in improper collection activities," (*id.* at ¶ 18). This caused Ismail to suffer "mental anguish and related physical damage." (*Id.* at ¶ 19).

Ismail's argument here is that APRS was negligent by "fail[ing] to collect the debt in accordance with Alabama probate laws," which she says take the form of "attempt[ing] to collect the debt after it was time-bared, fail[ing] to include the required disclosures, and fail[ing] to communicate with Plaintiff's counsel," (doc. 17 at 16); in other words, all the same actions she says violate the FDCPA. What Ismail does not show is a duty owed to her (or to the Estate) by APRS independent of the FDCPA. Thus, although Ismail casts it as an ordinary negligence claim, she appears to be operating under a negligence *per se* framework. *See Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1294 (M.D. Ala. 2010) (finding negligence and negligence *per se* claims essentially identical when both were "founded on the FDCPA statutory duty"). To succeed on a negligence *per se* claim, a plaintiff must demonstrate "(1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute

proximately caused the plaintiff's injury." *Id.* at 1293 (citing *Dickinson v. Land Developers Constr. Co.,* 882 So. 2d 291, 302 (Ala. 2003)).

Ismail's complaint is insufficient to state a negligence *per se* claim. First, although Alabama state courts do not appear to have addressed the issue, multiple federal district courts in Alabama (including this court) have held that Alabama law does not recognize a negligence claim founded on debt collection efforts under the FDCPA at all. *Winberry*, 697 F. Supp. 2d at 1294; *Patterson v. Ad Astra Recovery Serv.*, No. 2:17-CV-01569-SGC, 2018 WL 6181175, at *4 (N.D. Ala. Nov. 27, 2018); *Thompson v. Resurgent Capital Servs., L.P.*, No. 2:12-CV-01018-JEO, 2015 WL 1486974, at *26 (N.D. Ala. Mar. 31, 2015), *order clarified,* No. 2:12-CV-01018-JEO, 2015 WL 12681653 (N.D. Ala. July 17, 2015). Second, as stated above, Ismail's complaint does not support that APRS violated the FDCPA at all such that she could satisfy the third element.[12]

Ismail points to a number of cases she says supports negligence claims "aris[ing] from debt collection scenarios." (Doc. 17 at 14-15). Ismail's characterization is both broad and vague, which makes sense given that a review of the cited cases shows that none approaches the facts or legal issues in this case. In *Raley v. Bank of Am., N.A.*, No. 2:14-CV-857-WMA, 2014 WL 6684906, at *4 (N.D. Ala. Nov. 25, 2014), the court remanded the case to state court, but stated in dicta that reporting to the IRS that debt the plaintiff did not in fact owe could plausibly support a negligence claim. It premised its reasoning on the foreseeability of harm to plaintiff ("the key factor" in determining whether a specific duty exists at common law, *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993)), which it noted was "evident, since [the plaintiff's] tax liability would almost

---

[12] Considering Ismail's claim as a garden-variety negligence claim, she cannot show APRS breached a duty owed to her for the same reason.

certainly increase" due to the misreported debt.  *Id.*  By contrast, Ismail points to no foreseeable

harm here from receiving the Letter, nor is harm evidently foreseeable.   In *Howard v.*

*CitiMortgage, Inc.*, No. 1:13CV543-KS-MTP, 2014 WL 6802550, at *10 (S.D. Miss. Dec. 2,

2014), an unpublished, out-of-circuit case, the court found that Mississippi law supported

negligence claims premised on the same facts that could support a breach-of-contract claim for the

creation of an escrow account in contravention of loan documents between the parties.  *Howard* is

far afield from this case, but even if it were factually similar, Alabama law is at odds with

Mississippi law on this point.  *See Vines v. Crescent Transit Co.,* 85 So.2d 436, 440 (Ala. 1956)

("a negligent failure to perform a contract . . . is but a breach of the contract").  Although *Alves v.*

*Verizon*, No. CIV.08-3196 WHW, 2010 WL 2989988, at *11 (D.N.J. July 27, 2010), contained

both FDCPA claims and negligence claims, the negligence claims did not relate to debt collection

at all; instead, the plaintiff claimed the defendant "negligently intertwined two phone accounts into

the same phone number, causing undo [sic] charges to Plaintiff."  In *Narramore v. HSBC Bank*

*USA, N.A.*, No. 09-CV-635-TUC-CKJ, 2010 WL 2732815, at *8 (D. Ariz. July 7, 2010), the court

found a "very narrow" duty under Arizona law for a lender to disclose the amount of monthly loan

payments due; Ismail does not indicate how this deliberately limited holding analogizes to a

dissimilar duty under Alabama law.  And in *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368,

1378-79 (N.D. Ga. 2004), the court found Georgia law potentially supported a claim for negligent

loan servicing.  To the extent *Johnson* could be analogized to this context, the Alabama Supreme

Court has explicitly held the opposite. *U.S. Bank Nat. Ass'n v. Shepherd*, 202 So. 3d 302, 314 (Ala.

2015).

With neither a plausible rationale for actionable negligence for an FDCPA violation under

Alabama law nor, even if such a rationale existed, an FDCPA violation to support such a claim,

Ismail's negligence claim cannot survive. APRS is entitled to judgment on the pleadings on that claim.

### 2. Wantonness

Wantonness under Alabama law is the "conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary,* 992 So. 2d 5, 9 (Ala. 2007) (citation omitted) (emphasis in original). The Alabama Supreme Court has emphasized that "[w]antonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Tolbert v. Tolbert,* 903 So.2d 103, 114 (Ala. 2004).

Ismail's allegations as to her wantonness count are identical to those of her negligence count, simply replacing "negligently failed to prevent and/or participated in improper collection activities" with "recklessly and wantonly failed to prevent and/or participated in improper collection activities." (Doc. 1 at ¶¶ 21-23). In other words, Ismail again points to APRS's alleged FDCPA violations to support her wantonness claim. Wantonness *per se* does not appear to be a recognized tort under Alabama law. *See McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240-41 (N.D. Ala. 2015) (collecting Alabama cases that briefly mention the concept of a wantonness *per se* claim, but ultimately finding no Alabama case affirming its validity as a cause of action). But even if Ismail could proceed on a wantonness *per se* theory (or a wantonness theory premised on a duty parallel to an FDCPA duty), the complaint does not support APRS's knowledge or consciousness of probable injury. Ismail argues the court should infer a culpable mental state from her speculation that "APRS had a financial incentive to take shortcuts in collecting the debt from the Estate via informal means" and, as such, failed to expend the "time and resources to

property [sic] train employees in communicating with consumers and communicating with third parties." (Doc. 17 at 16). Aside from the fact that Ismail does not rely on any facts from the complaint to bolster this, at its root, her argument is just another way of stating the court should infer that APRS intentionally violated the FDCPA. Since the complaint does not support an FCDPA violation in the first place, Ismail's suggested inference is unwarranted. APRS is due judgment on the pleadings on Ismail's wantonness claim.

## IV. Conclusion

For the reasons stated above, APRS's motion for judgment on the pleadings, (doc. 15), is **GRANTED**. A separate order will be entered.

DONE this 12th day of November, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE